IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRIAN T.**[1], <br><br>  Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br>  Defendant. | Case No. 3:18-cv-00265-SI <br><br> **OPINION AND ORDER** |

Tim D. Wilborn, WILBORN LAW OFFICE, P.C., P.O. Box 370578, Las Vegas, NV 89137. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Heather L. Griffith, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Plaintiff Brian T. ("Plaintiff") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying Plaintiff's application for Social Security Disability insurance benefits pursuant to 42 U.S.C. §§ 416 and 423. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Because Plaintiff's date of last insured was December 31, 2012, Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. After carefully reviewing the ALJ's decision and the evidence in the record, the Court REVERSES the decision of the ALJ.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

PAGE 2 – OPINION AND ORDER

Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on April 2, 1959 and was 53 years old at the alleged onset of disability. Plaintiff has at least a high school education, is able to communicate in English, and has previously worked as a home attendant, a production technical semi-contractor, a general maintenance helper, a tree trimmer, and a pre-cast molder. AR 26-27. He filed for disability insurance benefits on June 19, 2013, alleging disability based on lumbar spine degenerative disc disease and foraminal stenosis of the lumbar spine status post laminectomies, epidural lipomatosis status post removal, neurogenic claudication, degenerative disc disease of the cervical spine, and obesity. AR 17.

Plaintiff's application was denied initially on February 14, 2014, and upon reconsideration on November 21, 2014. He requested a hearing before an administrative law judge ("ALJ"). AR 15. A hearing was held on May 19, 2016, in Portland Oregon. Plaintiff was represented by counsel and testified. *Id.* On September 14, 2016, the ALJ issued a written decision denying Plaintiff's application. AR 28. Plaintiff sought review by the Appeals Council, but the Appeals Council denied Plaintiff's request for review on December 7, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),

416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of August 11, 2011

through his date of last insured of December 31, 2012. AR 17. At the second step of the sequential analysis, the ALJ found the Plaintiff had the following severe impairments: lumbar spine degenerative disc disease and foraminal stenosis of the lumbar spine status post laminectomies, epidural lipomatosis status post removal, neurogenic claudication, degenerative disc disease of the cervical spine, and obesity. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404. AR 18.

Between steps three and four, the ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except he:

> was able to perform work that does not require climbing ladders, ropes, and scaffolds. The claimant was able to occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He was able to occasionally reach overhead bilaterally. The claimant was able to perform work that required no exposure to hazards, such as moving machinery and unprotected heights. The claimant required a sit-stand alternative, which is defined as the ability to change position after 30 to 60 minutes for three to five minutes while remaining on task.

AR 19. At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. AR 26. At step five, the ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, including merchandize marker, cashier II, and ticket taker.

## DISCUSSION

Plaintiff argues that the ALJ's decision finding Plaintiff not disabled was not supported by substantial evidence. Specifically, Plaintiff assigns error to the ALJ's decision to give little weight to the medical opinion testimony of Dr. Edmund Frank and Dr. Stephen Thomas. Plaintiff

PAGE 6 – OPINION AND ORDER

also argues that the ALJ improperly rejected Plaintiff's subjective symptom testimony and ignored lay witness testimony.

**A. Medical Opinion Testimony**

The ALJ generally will give more weight to opinions from treating sources, because they have treated the claimant over a period of time and "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone" or from one-time evaluations performed by consulting physicians. 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). If a treating physician's medical opinion is not inconsistent with other evidence in the record and is supported by medical findings, the treating physician's opinion should be given controlling weight. *See Holohan v. Masasnari*, 246 F.3d 1195, 1202 (9th Cir. 2001). In the hierarchy of medical evidence, the opinion of a treating physician is entitled to greater weight than that of an examining physician, which in turn is entitled to greater weight than that of a non-examining physician. *Garrison, v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ serves as "the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). In that capacity, the ALJ is responsible for making credibility determinations, resolving conflicts in the medical evidence, and resolving ambiguities." *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If, however, "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The ALJ can satisfy the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

PAGE 7 – OPINION AND ORDER

stating his interpretation thereof, and making findings." *Id.* Furthermore, the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Com'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Dr. Edmund Frank performed a physical examination of Plaintiff in February 2012 in relation to Plaintiff's claim for workers compensation benefits two months before Plaintiff underwent his back surgeries. AR 409-430. During that examination, Plaintiff complained of "stabbing and burning" pain in his back and "pins and needles" in his lower extremities. Upon examination, Plaintiff was able to walk normally, albeit slowly. He had some difficulty walking on his toes but no difficulty walking on his heels. He could perform a minimal squat and rise, and his straight leg raises were positive bilaterally and he showed full 5/5 strength throughout. Plaintiff did have tenderness in his lumbar spine and decreased sensation below his knees on both sides. This led Dr. Frank to conclude that Plaintiff had lumbar spine degenerative disc disease and nerogenic claudication. Dr. Frank believed that Plaintiff would experience a significant improvement of his back and leg pain with surgical treatment. Dr. Frank opined that Plaintiff could perform regular work with respect to his lumbar strain, but could not perform work with respect to his neurologic claudication. AR 427.

The ALJ gave partial weight to Dr. Frank's opinion because the ALJ found that the medical record that Dr. Frank relied on did not include any objective medical evidence of symptoms or limitations that would have precluded Plaintiff from fulltime work. AR 24. Dr. Frank noted that the diagnostic studies pre-dating Plaintiff's on the job injury did not show any acute problems, and his conclusions were based solely on his examination of Plaintiff and on Plaintiff's description of his symptoms. AR 424. Furthermore, the ALJ noted that Dr. Frank did

not provide any specific limitations on Plaintiff's physical abilities, other than stating that he could not perform work with respect to his neurologic claudication. TR 24. Dr. Frank's opinion was conclusory, lacking in detail, and not based on objective evidence. Accordingly, the ALJ was entitled to give it less weight. *Bray*, 554 F.3d at 1228.

Finally, the ALJ reasonably gave significant weight to the opinion of examining neurosurgeon Thomas Dietrich, who performed a physical examination of Plaintiff in August 2012. Dr. Dietrich opined that Plaintiff could perform work without restrictions as it related to his lumbar strain, and noted that Plaintiff exhibited "at least a moderate indication of functional interference exhibited in the course of the examination." AR 24. Dr. Dietrich noted a number of inconsistencies between Plaintiff's symptoms and typical symptoms of neurologic claudication and noted that that might be attributable to Plaintiff's high pain medication use and history of drug abuse. AR 440.

The ALJ also afforded little weight to the medical opinion Dr. Stephen Thomas, who performed a physical examination of Plaintiff in October 2012. After Plaintiff's second surgery, he reported that he had less leg pain but continued to have severe back pain. He alleged that he could only stand 10 to 15 minutes at a time and could walk less than a quarter of a mile. AR 25. Upon examination, Plaintiff exhibited full 5/5 strength in his hip, quadriceps, and hamstrings, and feet and toes, although he had decreased sensation in his left foot. Dr. Thomas opined that Plaintiff was significantly limited in his ability to repetitively use his lumbar spine, but Dr. Thomas did not propose any other specific limitations or abilities. Dr. Thomas's opinion was based heavily on Plaintiff's subjective allegations, which were not consistent with the medical record. The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. *Tomasetti*, 533 F.3d at 1041-42. The ALJ provided specific and legitimate reasons for giving less

weight to Dr. Thomas's opinion because it was contradicted by the weight of the medical evidence and was based on Plaintiff's subjective allegations, which themselves are not consistent with the record. AR 25. The ALJ's conclusions are supported by substantial evidence.

## B. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, thereby satisfying step one of the framework. AR 20. The ALJ, however, determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 20.

The ALJ noted that Plaintiff's impairments were not as severe as alleged during the relevant period. Specifically, the ALJ noted that the MRI images of Plaintiff's cervical spine taken in April 2011 showed minimal degenerative retrolisthesis, mild spondylosis, and a mildly bulging disc causing mild central canal stenosis. Generally, Plaintiff's back pain was treated conservatively. Plaintiff reported that his pain was 6-8/10 during a visit with Dr. Sarma on August 22, 2011. In September of 2011, he told Dr. Sarma that his back pain rated a 5/10.

In February of 2012, Plaintiff was examined by Dr. Fred Williams, who noted that although plaintiff was tender in his hips, bilateral and sciatic notches and mid-lumbar region, he was able to ambulate symmetrically, walk on his heels and toes, and onto a platform. Plaintiff showed no difficulty rising from a seated position. Dr. Williams performed Plaintiff's surgeries. After the surgeries, in May 2012, Plaintiff reported soreness and an inability so straighten his back, but was able to step on a stool and walk on his toes. AR 22. In August of 2012, Plaintiff established care with Dr. Madhu Potla, and Plaintiff was upon examination obese but otherwise healthy. He was in no acute distress and had unremarkable strength and muscle tone in all four extremities, with no negative Roberg signs and he could walk in a straight line without difficulty. In November 2012, Plaintiff showed additional improvement. His back was not tender and he had a normal range of motion and a normal alignment.

Taking into consideration the entire medical record, the ALJ determined that the Plaintiff's impairments support limiting him to the light exertional range, but overall considered the inconsistencies in the record to undermine the pervasiveness of Plaintiff's subjective symptom testimony. The ALJ also pointed to Plaintiff's inconsistent statements about his marijuana use, his military service, and whether or not he suffered from headaches as evidence that undermines the pervasiveness of Plaintiff's allegations of disability. AR 22-23.

The evidence of record did not support Plaintiff's allegations of disabling symptoms and limitations. The ALJ determined that Plaintiff's impairments could reasonably be expected to produce pain or other symptoms, but the ALJ provided clear and convincing reasons for finding that the intensity, persistence, and limiting effects of the alleged symptoms was not consistent with Plaintiff's testimony based on an examination of the entire record. The ALJ's finding is supported by substantial evidence.

**C. Lay Witness Testimony**

The ALJ failed to mention the lay testimony of Plaintiff's friend Jean M. The Ninth Circuit has stated that "lay witness testimony 'cannot be disregarded without comment'" *Molina*, 674 F.3d at 1114 (quoting *Nguyen*, 100 F.3d at 1467). The ALJ did not even provide a germane reason for why she may have found Jean M.'s testimony unpersuasive. The ALJ indisputably erred in failing to mention Jean M.'s lay witness testimony at all.

Courts have long recognized that harmless error principles apply in the Social Security Act context. *Id*. Courts "have, for example, deemed errors harmless where . . . [the court was] able to conclude from the record that the ALJ would have reached the same result absent the error." *Id.* As a general principle, an error is harmless when it is "inconsequential to the ultimate nondisability determination." *Carmickle*, 533 F.3d at 1162. In *Carmickle*, for example, although the ALJ had erred in several respects, "the remaining valid reasons supporting the ALJ's

PAGE 12 – OPINION AND ORDER

determination [we]re not 'relatively minor' . . . [and were] specific findings related to Carmickle's ability to perform vocational functions, and they clearly demonstrate that to the extent the ALJ found Carmickle's testimony incredible, the ALJ did not do so arbitrarily." *Id.* at 1163. The ALJ did not provide valid and invalid reasons for rejecting Jane M.'s lay witness opinion, but instead was wholly silent on the matter.

In *Stout*, the ALJ similarly erred by neglecting to comment on competent lay witness testimony, and the testimony that the ALJ disregarded identified limitations not considered by the ALJ, was uncontradicted by anything in the record, and was highly probative of Stout's inability to work. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). As such, the court found that it was not harmless error to ignore the lay witness testimony. *Id.* "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* The ALJ must provide reasons for rejecting lay witness testimony—the Court cannot provide independent reasons for rejecting the testimony. Courts are constrained to review the reasons the ALJ asserts. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Jean M. described a number of Plaintiff's limitations in daily life. She described his sleep patterns, his ability to go grocery shopping, his ability to walk for 1000 feet at a time before resting, and his difficulty cooking, cleaning, and with basic hygiene. AR 467-72. The ALJ did not even mention Jean M.'s testimony, and the Court can have no way of knowing what impact, if any Jean M.'s testimony might have had on the ALJ's opinion. Some of the limitations that Jean M. describes are limitations not elsewhere discussed by any medical professionals. As such,

the Court cannot confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have found Plaintiff not disabled.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge